1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | | |
|---|---|---|
| **JOSHUA GARCIA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **2:12-CV-1930 JWS** |
| | ) | |
| **vs.** | ) | **ORDER AND OPINION** |
| | ) | |
| **GURSTEL CHARGO, P.A.,** | ) | **[Re: Motions at dockets 26 and 31]** |
| | ) | |
| **Defendant.** | ) | |

**I.  MOTIONS PRESENTED**

At docket 26, defendant Gurstel Chargo, P.A. ("Gurstel") moves for judgment on the pleadings pursuant to Rule 12(c).  Plaintiff Joshua Garcia ("Garcia") responds at docket 30.  Gurstel's reply is at docket 33.  At docket 31, Garcia moves for summary judgment pursuant to Rule 56.  Gurstel responds at docket 34.  Garcia's reply is at docket 37.  Oral argument was not requested and would not be of aid to the court.

**II.  BACKGROUND**

Except as otherwise noted, the facts recited in this section are not disputed.[1]

Acting as counsel for HSBC Bank Nevada, N.A. ("Bank"), Gurstel filed a state court

---

[1]Most are facts alleged in Garcia's complaint and admitted in Gurstel's answer.

complaint against Garcia dated July 25, 2010.  It sought to recover $3,919.60 plus

interest for credit extended by the Bank.[2]  Garcia is a "consumer" as defined in the

FDCPA[3] and Gurstel is a "debt collector" as defined by the FDCPA.[4]    On August 2,

2010, Garcia called Gurstel and spoke to Jennifer Wiedle, a Gurstel lawyer.  Garcia

disputed the debt and told her there was fraudulent activity relating to another person's

using his social security number.  Gurstel sent a letter dated August 10, 2010, reciting

that Gurstel had been informed Garcia was claiming there was fraud relating to the

credit Gurstel was trying to collect.  The letter included an identity theft affidavit and

asked Garcia to complete and return it.  Garcia did so.  Gurstel received the completed

affidavit on August 21, 2010.

On May 11, 2012, Gurstel wrote Garcia offering to settle the Bank's claim for

50% of the balance.  On May 30, Gurstel sent a second letter indicating it might be

possible to settle for less than the outstanding balance and asked Garcia to contact

---

[2]The state court complaint appears to have been dismissed for lack of prosecution on May 6, 2011.  *See, HSBC Bank Nevada, N.A. v. Joshua Garcia*, Case No. CC2010-456208, Kyrene Justice Court of the State of Arizona in the County of Maricopa.

[3]FDCPA defines a "consumer" as a natural person obligated or allegedly obligated to pay a debt. 15 U.S.C. § 1692a(3).  In ¶ 5, the complaint alleges Garcia is a "consumer."  In a remarkable bit of pettifogging, Gurstel's answer responds in ¶ 5 that Gurstel lacks sufficient information to admit or deny Garcia's "consumer" status.  Whether Gurstel is unsure Garcia is a person, unsure he is allegedly obligated to pay a debt, or both is unclear.  In any case the response is ludicrous and of no moment.  For purposes of Gurstel's motion, the allegation of consumer status must be accepted as true.

[4]FDCPA defines a "debt collector" to be one who uses interstate commerce in a business whose principal purpose is debt collection, or who regularly attempts to collect debts for others. 15 U.S.C. § 1692a(6).  Paragraph 6 of the complaint alleges Gurstel is a "debt collector."  Gurstel's droll  response is that "it engages in the use of the mails and telephone in attempting to collect a debt from Plaintff.  To the extent that Paragraph 6 states a legal conclusion, no admission or denial is required." Doc. 7 at ¶ 6.  Gurstel's failure to deny that it is a debt collector is an admission that it is. Fed. R. Civ. P. 8(b)(6).

Gurstel by June 25, 2012, to discuss arrangements.  Garcia's complaint alleges that he called Gurstel on June 4, and said he sent a fraud affidavit to Gurstel in 2010.  On July 27, Gurstel sent Garcia a letter with text identical to the August 10, 2010 letter and enclosed another identity theft affidavit to be completed and returned.

Garcia's complaint pleads three Fair Debt Collection Practices Act ("FDCPA")[5] claims.  Count I alleges that Gurstel "violated 15 U.S.C. § 1692c(c) by communicating with Plaintiff after having received a letter from Plaintiff with a request to cease and desist all collection contacts or a statement that Plaintiff refuses to pay the alleged debt."[6]  Count II alleges that Gurstel "violated 15 U.S.C. § 1692e(2)(A) by falsely representing the character, amount, or legal status of Plaintiff's alleged debt."[7]  Finally, Count III alleges that Gurstel "violated 15 U.S.C. § 1692e(10) by using false representations or deceptive practices in connection with the collection of an alleged debt from Plaintiff."[8]  Garcia seeks to recover statutory damages of $1,000, actual damages, reasonable attorney fees and pre-judgment and post-judgment interest together with any other relief that may be appropriate.  Garcia's complaint was filed on September 11, 2012.

---

[5]15 U.S.C. § 1692 *et seq.*

[6]Doc. 1, ¶ 39.

[7]*Id.* at ¶ 41.

[8]*Id.* at ¶ 43.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### III.  STANDARDS OF REVIEW

**A.  Rule 12(c) Standard**

"After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings."[9]  Because "Rules 12(b)(6) and 12(c) are substantially identical,"[10] a motion for judgment on the pleadings is assessed under the standard applicable to a motion to dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)(6).[11]

Rule 12(b)(6), tests the legal sufficiency of a plaintiff's claims.  In reviewing such a motion, "[a]ll allegations of material fact in the complaint are taken as true and construed in the light most favorable to the nonmoving party."[12]  To be assumed true, the allegations, "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."[13]  Dismissal for failure to state a claim can be based on either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[14]  "Conclusory allegations of law . . . are insufficient to defeat a motion to dismiss."[15]

---

[9]Fed. R. Civ. P. 12(c).

[10]*Strigliabotti v. Franklin Resources, Inc.*, 398 F. Supp. 2d 1094, 1097 (N.D. Cal. 2005).

[11]*See Aldabe v. Aldabe*, 616 F.2d 1089, 1093 (9th Cir. 1980).

[12]*Vignolo v. Miller,* 120 F.3d 1075, 1077 (9th Cir. 1997).

[13]*Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

[14]*Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).

[15]*Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).

To avoid dismissal, a plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face."[16]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[17]  "The plausibility standard is not akin to a 'probability requirement' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[18]  "Where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[19]  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."[20]

**B.  Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.[21]  The moving party has the burden of showing that there is no genuine dispute as to any material fact.[22]  The moving party

---

[16]*Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

[17]*Id.*

[18]*Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

[19]*Id.* (quoting *Twombly*, 550 U.S. at 557).

[20]*Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

[21]Fed. R. Civ. P. 56(a).

[22]*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

1   need not present evidence; it need only point out the lack of any genuine dispute as to

2   material fact.[23]  Once the moving party has met this burden, the non-moving party must

3   set forth evidence of specific facts showing the existence of a genuine issue for trial.[24]

4   All evidence presented by the non-movant must be believed for purposes of summary

5   judgment and all justifiable inferences must be drawn in favor of the non-movant.[25]

6   However, the non-moving party may not rest upon mere allegations or denials, but must

7   show that there is sufficient evidence supporting the claimed factual dispute to require a

8   fact-finder to resolve the parties' differing versions of the truth at trial.[26]

### IV.  DISCUSSION

**A.  Motion at Docket 26**

        When deciding Gurstel's motion for judgment on the pleadings the court may

consider documents Garcia referenced and relied upon in his complaint even if they

were not exhibits to the complaint, so long as their authenticity is not in question.[27]   The

court may also take notice of matters of public record such as the proceedings in

Gurstel's state court suit against Garcia.[28]

        Gurstel first argues that Garcia's claims are barred by FDCPA's one year statute

---

[23]*Id.* at 323-25.

[24]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

[25]*Id.* at 255.

[26]*Id.* at 248-49.

[27]*See Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).

[28]*See Lee*, 250 F.3d at 688-89.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

of limitation.[29]  The argument fails because the liability alleged in all three claims would

arise from the letters Gurstel sent to Garcia in May and July of 2012, well within the one

year period prior to the filing of Garcia's complaint on September 11, 2012.  Gurstel's

reliance on *Magnum v. Action Collection Service, Inc.*[30] is misplaced, because Garcia

could not have known nor had reason to know that Gurstel would send him letters in

2012 until he received the letters.

 Next, Gurstel argues that Count I should be dismissed, because Garcia neither

informed it in writing that he refused to pay the debt nor informed Gurstel in writing that

he wanted it to cease communications, a predicate to liability under 15 U.S.C. §

1692c(c).  That statue provides as follows:

> If a consumer notifies a debt collector in writing that the consumer refuses
> to pay a debt or that the consumer wishes the debt collector to cease
> further communication with the consumer, the debt collector shall not
> communicate further with the consumer with respect to such debt, except-
>> (1)  to advise the consumer that the debt collector's further
>> efforts are being terminated;
>> (2)  to notify the consumer that the debt collector or creditor
>> may invoke specified remedies which are ordinarily invoked
>> by such debt collector or creditor; or
>> (3)  where applicable, to notify the consumer that the debt
>> collector or creditor intends to invoke a specified remedy.

 The only *written* communication Garcia sent to Gurstel prior to July 2012, was

the fraud affidavit which Gurstel received on August 21, 2010.  Gurstel contends that

Garcia's communication is penned on a document it provided which nowhere includes a

statement that Garcia wished Gurstel to cease communications, and nowhere includes

---

[29]15 U.S.C. § 1692k(d).

[30]575 F.3d 935, 940 (9th Cir. 2009).

1    a statement that Garcia refused to pay.

2          "Congress enacted [FDCPA] to protect consumers from 'improper conduct' and

3    illegitimate collection practices 'without imposing unnecessary restrictions on ethical

4

5    debt collectors.'"[31] Toward that end courts employ the "least sophisticated debtor"

6    standard.

7          In judging the actions of a debt collector, we invariably ask whether the
         information provided was or its actions were confusing or misleading.
8         Quite simply, we seek to ensure that even the least sophisticated debtor is
         able to understand, make informed decisions about, and participate fully
9         and meaningfully in the debt collection process. * * * That goal–and,
         therefore, the least sophisticated debtor standard–is no less important or
10        relevant when considering the actions of the debtor than when considering
         the actions of a debt collector.[32]
11

12         With the least sophisticated debtor standard in mind, the court must consider

13   whether the fraud affidavit should be considered an adequate written notice to Gurstel

14   that Garcia refused to pay or that Gurstel should cease communications. To begin with,

15   Gurstel's own conduct in soliciting the fraud affidavit after having been told verbally that

16
     the debt was disputed and related to fraudulent use of Garcia's social security number
17
     could easily be confusing or misleading to an unsophisticated debtor.  The request for
18
     the affidavit would appear to an unsophisticated debtor to be follow-up paperwork
19
     showing the debt would not be paid by the debtor.  Similarly, Garcia's completion and
20

21   return of the fraud affidavit would readily support a least sophisticated debtor's

22   expectation that the debt collector understood that the debtor refused to pay the debt.

23

24

25         [31]*Clark v. Capital Credit & Collection Serv.,* 460 F.3d 1162, 1169-70 (9th Cir. 2006)
     (citation omitted).
26

27         [32]*Id.* at 1171 (citations omitted).

28                                       -8-

The least sophisticated debtor standard aside, it is hard to read the fraud affidavit without concluding that Garcia was not going to pay the debt. The affidavit contained a number of responses to questions posed by Gurstel which are consistent with a refusal to pay the debt and inconsistent with the notion that Garcia would pay the debt. More specifically, in his responses Garcia averred that he did not authorize anyone to use his name or personal information to obtain the credit, that he had not received any benefit as a result of the credit extension, that his identification documents were stolen, and that the person who obtained the credit was David Moffett.[33] In summarizing his position Garcia wrote "I have received a summons for a credit that I have never had nor used . . . Dave Moffett had used my social security number."[34] The fraud affidavit was sufficient to put Gurstel on notice that Garcia would not pay the debt.

The court agrees with Gurstel that the fraud affidavit does not communicate a request that Gurstel cease communicating with Garcia. But that makes no difference, because the controlling statute requires the debt collector to cease communications if the debtor indicates either a desire to terminate communications or, as happened here, a refusal to pay the debt.[35]

Perhaps realizing the ice was too thin to support either of its first two arguments, Gurstel also contends that the May and July 2012 communications fall into an exception to the prohibition on communications. There are three statutory exceptions. The

---

[33]"ID Theft Affidavit," doc. 27-3 at ¶¶ 11 - 14.

[34]*Id.* at ¶ 16.

[35]15 U.S.C. § 1692c(c).

exceptions are for communications advising the debtor (1) that the debt collector's further efforts are terminated, (2) that the debt collector "may invoke specified remedies which are ordinarily invoked," or (3) that the debt collector "intends to invoke a specified remedy."[36]   Gurstel relies on second exception.[37]   Gurstel suggests that the "remedy" was offering Garcia "an avenue to discuss resolution of the debt if he was interested in doing so."[38]

The second exception applies when a debt collector is giving notice of a specific remedy it may invoke.  Such a remedy might be a demand for arbitration or the filing of a lawsuit.  The May 2012 communications do not refer to any specific remedy that may be pursued.  Rather, they essentially offer to compromise the dispute.  At first blush, the May 2012 letters might appear to fall outside the second exception.  However, this court finds the discussion in a Sixth Circuit decision cited by Gurstel to be instructive.  In *Lewis v. ACB Business Services, Inc.,*[39] the debtor sent the debt collector a written demand to cease communications.  A few weeks later, the debt collector sent the debtor a communication which in character and tone is indistinguishable from the two May 2012 communications at issue here.  Holding that the communication in *Lewis* fell within the exception established by 15 U.S.C. § 1692c(c)(2), the appellate court explained:

We believe that [debtor's] interpretation of § 1692c(c)(2), which would

---

[36]15 U.S.C. § 1692c(c) (1), (2) and (3).

[37]Doc. 33 at p. 3.

[38]*Id.*

[39]135 F.3d 389 (6th Cir. 1998).

prohibit collectors from sending noncoercive settlement offers as a remedy, is 'plainly at variance with the policy of the legislation as a whole.' To hold that a debt collector cannot offer payment options as part of an effort to resolve an outstanding debt, possibly without litigation, would force honest debt collectors seeking a peaceful resolution of the debt to file suit in order to advance efforts to resolve the debt–something that is clearly at odds with the language and purpose of the FDCPA.[40]

Following the decision in the *Lewis* case the court concludes that the May 2012 communications fall within the second exception.  Similarly, the July 2012 solicitation of a second fraud affidavit represents an effort by Gurstel to help resolve the matter amicably.  Gurstel is entitled to dismissal of Count I.

Gurstel contends that Count II should be dismissed, because the 2012 communications did not falsely represent "the character, amount or legal status of any debt" as required to establish liability under 15 U.S.C. § 1692e(2)(A).  Garcia responds that the 2012 communications "falsely represented that Mr. Garcia owed a debt that did not belong to him."[41]  The character (type) of the debt and its amount are not disputed.  The only possible basis for Count II is that the 2012 communications falsely represented the legal status of the debt.  While for purposes of the motion at hand, Garcia's assertion that he did not owe the debt must be accepted as true, there is nothing in the 2012 communications which actually asserted that the legal status of the debt was that Garcia was responsible to pay it.  Rather, the 2012 communications invited further dialogue about the debt and even provided a second opportunity for Garcia to contend that the debt was not Garcia's debt.  Under the least sophisticated debtor standard

---

[40]*Lewis*, 135 F.3d at 399 (internal citation omitted).

[41]Doc. 30 at p. 10.

-11-

applied in the context of a Rule 12(c) motion, Garcia's position is untenable.  The 2012

communications cannot reasonably be construed to falsely represent the character,

amount or legal status of the debt.  Gurstel is entitled to dismissal of Count II.

Furthermore, to allow Count II to proceed on the basis that the efforts to compromise

the alleged debt amounted to a false representation of legal status would be

inconsistent with the rationale of the appellate court decision in *Lewis* quoted in the text

above.

To succeed on Count III, Garcia would need to prove that Gurstel used false

representations or deceptive means to collect the debt or to obtain information from

Garcia.[42]  It is Garcia's position that because he had notified Gurstel that Garcia would

not pay the debt, the May and July 2012 communications constitute false

representations or an attempt to deceive him.  As discussed in the preceding

paragraph, the May and July 2012 communications do not constitute false

representations.

The question remains whether they were deceptive communications.  The Third

Circuit has explained that, "[a] communication is deceptive for purposes of [FDCPA] if it

can be reasonably read to have two or more different meanings, one of which is

inaccurate."[43]  Garcia's complaint does not ascribe any particular inaccurate meaning to

the 2012 communications.  His complaint simply asserts in the most general of terms

---

[42]15 U.S.C. § 1692e(10).

[43]*Campzano-Burger v. Midland Credit Mgmt.*, 550 F.3d 294, 298 (3d Cir. 2008).

-12-

that the communications were "false representations or deceptive practices."[44]
Argument in Garcia's briefing is limited to the proposition that these communications
wrongly asserted that he owed the debt, an argument already addressed.  The court
finds nothing otherwise inaccurate about the 2012 communications even when
considered in light of the least sophisticated debtor standard.  The May communications
invited Garcia to compromise the dispute and the July communication offered a way for
him to provide more information.

In summary, Gurstel is entitled to judgment on the pleadings.  Applying the Rule
12(c) standard as informed by the least sophisticated debtor analytical approach, the
court concludes that Counts I, II and III fail to state a facially plausible claim which
entitles Garcia to relief.

**B.  Motion at Docket 31**

The court having determined that Gurstel is entitled to judgment, Garcia's motion
for summary judgment at docket 31 must be denied as moot.

### V.  CONCLUSION

For the reasons set forth above, the motion at docket 26 is **GRANTED** and the
motion at docket 31 is **DENIED** as moot.  The Clerk will please enter judgment that
plaintiff take nothing from defendant.

DATED this 19th day of August 2013.

_____
/S/
JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE

_____

[44]Doc. 1 at p. 8.

-13-